A91A1629. SPALDING FORD LINCOLN-MERCURY, INC.
v. TURNER BROADCASTING SYSTEMS, INC.
(415 SE2d 26)

POPE, Judge.

In February of 1988, Rich/Love Advertising Agency, Inc. ("Rich") acting on behalf of appellant/defendant Spalding Ford Lincoln-Mercury, Inc. ("Ford") made arrangements for certain advertis-

ing to run during the months of February and March 1988, on television station WTBS, which is owned by appellee/plaintiff Turner Broadcasting Systems, Inc. ("WTBS"). On February 8, 1988, Rich signed a credit application and media agreement with WTBS on behalf of Ford. It is undisputed that agreement is the only written contract between the parties to this dispute. The contract provided that the advertising would start on the day the contract was signed and that the total contract amount would be $4,000. The pertinent terms and conditions of the contract are set forth below:

"All advertising placed with [WTBS] by the undersigned advertising agency and advertiser shall be governed by the following terms and conditions.

"In consideration for [WTBS] providing television advertising, production services or related services in the future, the advertiser and advertising agency acknowledge and assume full responsibility, jointly and severally, for payment of all advertising and related expenses incurred, ordered and provided on behalf of the advertiser by [WTBS]. All such television advertising and related services provided by [WTBS] shall be due and payable within thirty (30) days from the date of invoice. Interest shall be added to all amounts thirty (30) days or more past due at the rate of one and one-half percent (1-1 ½ %) per month, calculated from the date of invoice. Should timely payments not be made, advertiser and advertising agency agree to pay all costs of collection including attorney's fees of fifteen percent (15%) and court costs if collected by law or through any attorney at law.

. . .

"This agreement and the terms and conditions outlined herein, shall govern and control all future services which may be provided by [WTBS], from time to time, for the undersigned advertising agency and advertiser.

"If the agreement is signed by the advertising agency alone, then advertising agency shall be deemed to have executed this agreement both as principal and as authorized agent for any and all advertisers on whose behalf advertising agency may, from time to time, request services be performed by [WTBS]."

WTBS billed Rich for the February and March advertising. Rich in turn billed Ford, who paid Rich. Rich then forwarded payment for the advertising to WTBS.

Approximately six months after the first block of advertising for Ford ran on WTBS, Rich approached WTBS about a second block of advertising for Ford to run from October 1988 through March 1989. At Ford's request the block of advertising was reduced to run only through January 1989. WTBS billed Rich on a monthly basis for the advertising. Rich then billed Ford for all advertising it had arranged for Ford, including WTBS, on a monthly basis. It is undisputed that

Ford timely paid Rich for all advertising. Rich, however, failed to forward Ford's payments to WTBS.

WTBS sued both Ford and Rich for $21,675, the amount due for the advertising that ran from October 1988 through January 1989. Ford answered and filed a cross-claim for indemnity against Rich. Rich failed to answer the suit and a default judgment was rendered for WTBS against Rich. A jury trial was held on WTBS's claims against Ford. A jury found for WTBS in the principal amount of $21,675, plus interest and attorney fees. Ford filed a motion for j.n.o.v. or in the alternative, motion for new trial, which the trial court denied. Ford appeals from the judgment and the trial court's denial of its motion for j.n.o.v.

1. Ford first contends that the evidence does not support the jury's finding that WTBS relied on the credit of Ford. Essentially, Ford argues that WTBS relied solely on the credit of Rich, making Rich its debtor, and is barred from pursuing Ford. The intention of the parties as to whom is to be bound when the principal is disclosed is a question that is properly submitted to the sound discretion of the jury. *Kingsberry Homes v. Findley*, 242 Ga. 362, 365 (249 SE2d 51) (1978). Contrary to Ford's contentions on appeal, and construing the evidence to support the jury's verdict, as we must on appeal, the record reflects that there was sufficient evidence to support the jury's finding that WTBS relied upon the credit of both Ford and Rich. Consequently, we find this enumeration of error to be without merit.

2. Ford further contends that the trial court erred in denying its motion for directed verdict on the grounds that WTBS had elected to proceed against Rich, as agent, and was barred to proceed against Ford. Ford seemingly argues that because WTBS obtained a default judgment against Rich, it is now barred from pursuing Ford. It is undisputed that WTBS has been unable to collect that judgment from Rich and the evidence indicates that recovery from that party is unlikely. OCGA § 9-2-4 provides that "[a] plaintiff may pursue any number of consistent or inconsistent remedies against the same person or different persons until he shall obtain a satisfaction from some of them." The contract language set forth above specifically provides that "the advertiser and the advertising agency acknowledge and assume full responsibility, jointly and severally, for payment of all advertising. . . ." WTBS brought suit against both Ford and Rich alleging that the defendants are jointly and severally liable to it. Merely obtaining a default judgment against one party does not constitute an election. In sum, there is simply no evidence to support Ford's contention that WTBS elected to proceed exclusively against Rich.

3. Ford argues that the contract discussed above expired before the advertising for which WTBS is seeking payment began appearing on WTBS in October 1988. For that reason, Ford contends that the

jury's award of attorney fees and interest pursuant to that contract is improper. The contract does not specify a date on which it will expire. Ford contends that after advertising in the amount of $4,000 had run, the total contract amount stated on the contract, the contract expired. As discussed above, the terms and conditions of that contract stated that "[t]his agreement and the terms and conditions outlined herein, shall govern and control all future services which may be provided by [WTBS], from time to time, for the undersigned agency and advertiser." There was sufficient evidence presented from which the jury could have properly found that when Rich approached WTBS about running a second block of advertising for Ford, the parties agreed to modify or renew that contract to encompass the second block of advertising. See *Turem v. Sinowski & Jones*, 195 Ga. App. 829 (1) (395 SE2d 60) (1990). Accordingly, the trial court did not err in failing to set aside the jury's award to WTBS of attorney fees and interest.

4. The trial court did not err in failing to instruct the jury on the defense of laches. "The doctrine of laches is an equitable one and has no relevancy to the action here since the rights to be enforced were upon legal grounds, and the statute of limitation had not run. [Cits.]" *Cosby v. A. M. Smyre Mfg. Co.*, 158 Ga. App. 587, 592 (7) (281 SE2d 332) (1981).

*Judgment affirmed. Birdsong, P. J., and Cooper, J., concur.*

DECIDED JANUARY 15, 1992.

*Newton & Howell, John T. Newton, Jr.*, for appellant.
*Schreeder, Wheeler & Flint, J. Christopher Desmond, Lawrence S. Burnat*, for appellee.