A04A0727. HANDEX OF FLORIDA, INC. v. CHATHAM COUNTY.
(602 SE2d 660)

ADAMS, Judge.

In late 1999 Chatham County advertised for public bids to relocate portions of the Bacon Park Landfill (the Project). Handex of Florida, Inc. was the successful bidder on the Project, and Handex[1] and the County entered into a Construction Services Contract (the Contract) in February 2000. Under the terms of the Contract, Handex was to excavate and dispose of waste from portions of the landfill and to replace the excavated waste with granular backfill. All work under the Contract was to be done in accordance with the specifications and plans which were provided by the County and which were incorporated into the Contract. Payment for the excavated material was determined under Section 1.07 (B) (3) of the Contract and was based upon the volume of waste removed as determined by comparison topographic/planimetric surveys conducted at the beginning and completion of the Project. Handex was responsible for hiring the surveyor to perform the surveys.

Handex entered into a subcontract with Waste Management of Georgia, Inc. pursuant to which Waste Management was to relocate the nonhazardous material from the landfill and provide granular fill material for the Project. Waste Management's performance under its agreement with Handex is not at issue in this appeal.

At some point during the project, Handex notified the County that the survey performed by its surveyor may have been inaccurate.

---

[1] Handex of Florida, Inc. is one of approximately 22 subsidiaries of Handex Environmental, Inc. Although the contract was entered into by Handex of Florida, the work on the Project was actually performed by Handex Construction Services, Inc., another subsidiary of Handex Environmental.

The County hired an independent engineering firm to confirm the surveys. On March 27, 2000, Handex and the County met (the Preconstruction conference) and agreed that interim payments made during the Project would be based on the "truck count method."[2] However, according to the minutes from that meeting, final payment "may be adjusted to reflect actual volumes as determined by land survey."

Waste Management subsequently brought suit against Handex and The Insurance Company of the State of Pennsylvania (the Surety), contending that Handex had failed to pay it for the work performed on the Project in accordance with the subcontract and the payment bond. Handex answered, relying in part on the defense that the subcontract with Waste Management contained a "pay when paid" clause, which provided that Handex was not obligated to pay Waste Management until it had received payment from the County.

Handex filed a third-party complaint against the County, contending that any failure to pay Waste Management resulted from the failure of the County to pay Handex for all work performed; that the County had breached its contract with Handex; and that payment should be made in accordance with the truck count measure rather than the topographic survey method specified in the Contract.

The County filed a motion for summary judgment against Handex, contending, inter alia, that Handex had been paid in accordance with the terms of the Contract; that there were no genuine issues of material fact regarding the validity of the survey method of measurement that was specified in the Contract and that there was no evidence that the Contract had been amended or altered to provide a different method of calculating the waste removed from the site. Handex then filed a motion for partial summary judgment against the County, contending that the method of measurement set forth in the Contract was unreliable and that, therefore, the measure of the amount of waste excavated should be measured by a reasonably accurate alternative method.

In an extensive order, the trial court granted the County's motion for summary judgment and denied Handex's motion for partial summary judgment. Handex appeals.[3]

1. Handex argues on appeal that the method of measurement specified in the Contract proved unreliable because the surveys upon which it was based were inaccurate, that using the topographic

---

[2] Using the truck count method, pay quantity is determined by multiplying the number of truck loads hauled away each month by the average payload capacity for the truck.

[3] Waste Management and the Surety also filed motions for summary judgment, but they are not at issue here.

survey method specified in the Contract results in a windfall to the County because it does not result in payment to Handex for all waste removed from the site and results in a violation of the term of the Contract which provides that Handex is to be paid for all work performed on the Project. In support of this argument Handex points to the evidence that it would be entitled to payment for excavating 130,719 cubic meters of waste using the truck count method, but only 80,181 cubic meters using the survey method. Handex also argues that a question of fact exists as to whether the parties intended that the Contract be modified so that the truck count method replaced the survey method as the measurement to be used in calculating the amount of waste removed from the Project. The County argues that the Contract provided that all modifications be in writing, and further that the evidence does not support Handex's argument that the parties' agreement to use the truck count method as an interim method of measurement creates an issue of fact concerning whether the parties agreed to use a different method of measurement to determine final quantities of the amount of waste removed from the site.

We agree with the trial court that the dispositive issue in this case is whether the Contract had been amended to provide for a different method of calculating the total volume of waste removed from the site. The trial court has crafted an extensive and well-reasoned order addressing these issues, and we adopt it as follows:

> Handex ... contends that the contract provision regarding the method of quantifying the amount of waste disposed was modified by mutual departure and the County has waived its right to enforce the contract provision requiring that all modifications be in writing. In support of this argument, Handex points to evidence that during the course of the project, the County agreed to make interim payments to Handex for waste disposal based upon truck counts although the contract specifically provided that payments for waste excavation would be based upon before and after topographic/planimetric surveys. The County however, asserts that the parties agreed only to utilize the truck count method for monthly progress payments and that final determination of the quantity of waste excavated would be based upon comparison of the topographic surveys as provided in the contract. In further support of their assertion that the terms of the contract regarding payment for waste excavation were not altered, the County points to the provision [of the Contract] requiring that all modifications be written: "No verbal agreement or conversation with any officer, agent, or

employee of Chatham County, Georgia, either before, during or after the execution of this contract, shall affect or modify any of the terms or obligations herein contained, nor shall such verbal agreement or conversation entitle the contractor or his subcontractors to any additional payment whatsoever under the terms of this contract. All changes to this shall be in writing and appended hereto. . . ."

Contractual provisions such as the foregoing have been held to be valid and enforceable. *Gerdes v. Russell Rowe Communications, Inc.*, 232 Ga. App. 534, 536 (502 SE2d 352) (1998). However, waiver of such a written modification requirement in a contract may be established by the parties' course of conduct. *Id.* The record establishes without dispute that the County and Handex . . . agreed that interim payments for waste excavation would be paid to Handex based upon truck count volume estimate, but that the final invoice would reflect actual volumes as determined by land survey. The record further establishes that the County made interim payments to Handex based upon truck count volume estimates and that no written change order was executed to reflect this departure from the Contract. Morever, there is evidence that the parties acted upon a number of oral modifications to the contract including provisions regarding the placement of and payment for granular material test strip, preparation of construction meeting minutes, and subcontracts. Clearly, the foregoing evidence establishes that the County waived the requirement that modification to the contract be in writing. . . . Notwithstanding the foregoing, the determinative issue is whether the parties reached a mutual departure from the contract provision requiring that final payment for waste excavation be based upon the comparison of topographic surveys.

"While parties may agree to depart from the terms of a contract to support such a departure, there must be some evidence that an agreement to do so had been reached." *Georgia Color Farms, Inc. v. K.K.L., L.P.*, 234 Ga. App. 849[, 851] (507 SE2d 817) (1998). It is well-settled law "that a departure from the terms of a contract which is relied upon by one of the parties so as to require a notice of intention to insist on strict compliance with the original contract terms under the provisions of OCGA § 13-4-4 must be mutual between the parties and intended, and must be such as, in law, to make practically a new agreement as to the stipulations contained in the original contract." *United Servs. Auto. Assn. v. Gottschalk*, 212 Ga. App. 88[, 90] (441 SE2d 281) (1994). Generally,

"whether there has been such a mutual and intended departure so as to make practically a new agreement is generally a question for [the] jury to determine." *Id.* However, in proper cases, a mutual departure issue may be determined as a matter of law. *Reeder v. General Motors Accept. Corp.,* 235 Ga. App. 617, 620 (510 SE2d 337) (1998). While a distinct stipulation in a contract may be waived by the conduct of the parties, it must appear that it was the intention of the parties to treat such stipulation as no longer binding. The mere fact that one party so intended would not bring about this result. It must appear that it was the mutual intention; that is, the circumstances must be such as, in law, to make practically a new agreement as to the stipulations in the original contract. (*Chastain v. Spectrum Stores, Inc.,* 204 Ga. App. 65, 67 (418 SE2d 420) (1992).)

Although Handex . . . has cited numerous instances in which the County did not strictly adhere [to] the requirement that all modifications be in writing, Handex . . . points to no evidence that the parties agreed to abandon the contract provision requiring that the final quantification of waste removed be based upon topographic surveys. Instead, Handex . . . argues that because the County did not strictly adhere to the requirement that all modifications be written, the County cannot now rely upon the lack of a written modification in support of its argument that the contract method of measurement had not been altered. However, the County does not simply rely upon the absence of a written modification. The County also contends that the parties never reached an oral agreement to abandon the land survey method of measurement. Indeed, [the] minutes of the pre-construction meeting — where the agreement regarding the truck count estimates was reached — reflects that "[t]he final invoice may be adjusted to reflect actual volumes as determined by land survey." The foregoing evidence, which has been undisputed, supports the County's contention that despite the parties' agreement to use truck count estimates for interim payments, final determination of the actual amount of waste removed would be based upon land surveys as provided for in the contract.

Based on the foregoing, the trial court properly denied Handex's motion for partial summary judgment against the County and granted summary judgment to the County on this issue. See *Jahncke Svc. v. Dept. of Transp.,* 172 Ga. App. 215 (322 SE2d 505) (1984).

2. The trial court also found that summary judgment was appropriate on Handex's claims that the County had breached the Contract by failing to pay for all work performed. As the trial court found, Handex's claim that it has not been paid for all work performed was dependent upon using a measurement other than the topographic survey method specified in the Contract to determine the amount of waste excavated. Because we held in Division 1 that the trial court correctly determined that the County's failure to use an alternative method of measurement to quantify the waste removed from the project does not constitute a breach of the parties' Contract, summary judgment was properly granted as to this issue also.

Moreover, we also agree with the trial court's conclusion that the remainder of Handex's arguments concerning the County's failure to adhere to the Contract do not affect the resolution of the real issue between the parties, which is the method of measurement to be used in determining the waste removed from the project. Summary judgment was properly granted as to these claims as well.

3. Based on our holding in Division 1, it is also unnecessary for us to address Handex's remaining enumerations of error.

*Judgment affirmed. Ruffin, P. J., and Eldridge, J., concur.*

DECIDED JULY 1, 2004.

*Glenn, Rasmussen, Forgarty & Hooker, Lisa N. Kellogg, George E. Spofford,* for appellant.

*Hunter, Maclean, Exley & Dunn, Christopher W. Phillips,* for appellee.