[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-11400
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCTOBER 5, 2011
JOHN LEY
CLERK

D.C. Docket No. 1:10-cv-00627-WCO

RODNEY D. SAMPSON,

                                        Plaintiff - Appellant,

versus

WASHINGTON MUTUAL BANK,
JP MORGAN CHASE BANK, NATIONAL ASSOCIATION,
a Federally Charted Financial Institutions,
jointly and severally as in their Corporate capacity,

                                        Defendants - Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(October 5, 2011)

Before EDMONDSON, CARNES and KRAVITCH, Circuit Judges.

PER CURIAM:

Rodney Sampson appeals the district court's dismissal of his complaint. He

contends that the district court erred by finding some of the claims in his complaint time-barred by the statute of limitations and by concluding that he had failed to set forth facts sufficiently alleging the rest of the claims in his complaint.

## I.

Sampson refinanced his mortgage loan on a residential property in October 2004, borrowing over $1.3 million from Washington Mutual Bank. The loan was later purchased along with the rest of Washington Mutual's assets by JP Morgan Chase Bank. Sampson eventually defaulted on the loan, which resulted in a nonjudicial foreclosure sale of the property in July 2009.

A few weeks after the foreclosure sale, Sampson filed a complaint in Georgia state court, which Washington Mutual and Chase removed to federal court. His complaint contained claims for (1) violations of the Truth in Lending Act (TILA), 15 U.S.C. § 1601 et seq.; (2) fraud in inducing the loan transaction; (3) wrongful foreclosure; (4) rescission of the note and mortgage; (5) promissory estoppel; (6) a violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq.; and (7) predatory lending. Based on those claims Sampson sought relief in the form of money damages and an injunction preventing the defendants from placing

negative remarks on his credit report.[1]

The defendants filed a Federal Rule of Civil Procedure 12(c) motion for judgment on the pleadings. The district court granted that motion and dismissed Sampson's complaint.[2] His fraud, wrongful foreclosure, and rescission claims were dismissed without prejudice, and the rest of the claims were dismissed with prejudice. This is his appeal from that dismissal.

## II.

Sampson contends that his TILA claims, which were based on the defendants' failure to disclose several required documents at the closing of the loan transaction, are not time-barred by the one-year statute of limitations.[3] He

---

[1] Sampson also sought to enjoin the foreclosure proceedings, but that claim is moot because by the time Sampson filed suit Chase Bank had already held the nonjudicial foreclosure sale and sold Sampson's property. See Cotton v. First Nat'1 Bank of Gwinnett Cnty., 220 S.E.2d 132, 132–33 (Ga. 1975) (finding an action to enjoin a foreclosure sale that had already occurred moot).

[2] We construe the defendant's motion as a Rule 12(b)(6) motion to dismiss and review the district court's grant of it accordingly. The district court erred by granting the motion under Rule 12(c) because a Rule 12(c) motion for judgment on the pleadings may be filed only "after the pleadings are closed," Fed. R. Civ. P. 12(c), and the defendants never filed an answer in this case. "The court's error, however, is of no moment. Whether the court examined [the complaint] under Rule 12(b)(6) or Rule 12(c), the question was the same: whether the [complaint] stated a claim for relief." Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp., 305 F.3d 1293, 1295 n.8 (11th Cir. 2002).

[3] In his brief to this Court, Sampson expressly abandoned any claim of rescission under TILA, which has a three-year statute of repose. See 15 U.S.C. § 1635(f). In any event, the three-year statute of repose cannot be equitably tolled, see Beach v. Ocwen Fed. Bank, 523 U.S. 410, 412, 419, 118 S.Ct. 1408, 1409, 1413 (1998) (holding "that § 1635(f) completely extinguishes the right of rescission at the end of the 3-year period"), and thus bars Sampson's claim, which

3

concedes that the filing of his claims nearly five years after the loan transaction took place was well after the statute had run. He argues, however, that we should equitably toll his limitations period because "disclosure documents were completely withheld" from him and "[w]ithout being provided with the required information, [he] was unaware of his rights."

"We review de novo the district court's interpretation and application of the statute of limitations." Baker v. Birmingham Bd. of Educ., 531 F.3d 1336, 1337 (11th Cir. 2008) (quotation marks omitted). Equitable tolling is available for stale TILA claims but only if the plaintiff was prevented from bringing suit on those claims "due to inequitable circumstances." Ellis v. Gen. Motors Acceptance Corp., 160 F.3d 703, 706 (11th Cir. 1998). The TILA violations that Sampson has alleged in his complaint "'occur[]' when the [loan] transaction is consummated." In re Smith, 737 F.2d 1549, 1552 (11th Cir. 1984). And "[n]ondisclosure is not a continuing violation for purposes of the statute of limitations." Id.

Sampson alleges no inequitable circumstances outside of the fact that the defendants did not disclose the documents that are required under TILA. By definition, nondisclosure happens every time there is a TILA nondisclosure violation, and mere violation of the statute cannot serve as extraordinary

was brought nearly five years after the alleged TILA violation occurred.

4

circumstances that merit tolling. Because "nondisclosure is not a continuing violation for purposes of the statute of limitations" and does not by itself toll the running of the limitations period, Sampson's TILA claims are time-barred, see In re Smith, 737 F.2d at 1552, and the district court did not err in dismissing them.

III.

Sampson also contends that he sufficiently alleged in his complaint claims: for fraud; for wrongful foreclosure; for rescission of his note and mortgage; for promissory estoppel; for violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq.; and for predatory lending.

"We review de novo the district court's grant of a motion to dismiss under Rule 12(b)(6)." Edwards v. Prime, Inc., 602 F.3d 1276, 1291 (11th Cir. 2010). In general, a district court should not look outside the complaint in a motion to dismiss, but it may consider documents attached to a defendant's motion if those documents are "relationship-forming contracts [that] are central to a plaintiff's claim." SFM Holdings, Ltd. v. Banc of Am. Sec., LLC, 600 F.3d 1334, 1337 (11th Cir. 2010); Harris v. Ivax Corp., 182 F.3d 799, 802 n.2 (11th Cir. 1999) ("[A] document central to the complaint that the defense appends to its motion to dismiss is also properly considered, provided that its contents are not in dispute."). In this case, the defendants appended to their motion to dismiss a note, a security

5

deed, and a deed under power, none of which Sampson disputes and all of which are central to his claims that arose out of his loan transaction with the defendants.

In reviewing the grant of a motion to dismiss, we take the factual allegations as true and construe them in the light most favorable to the plaintiffs. Edwards, 602 F.3d at 1291. "We are not, however, required to accept the labels and legal conclusions in the complaint as true." Id. "Dismissal for failure to state a claim is proper if the factual allegations are not enough to raise a right to relief above the speculative level." Id. (quotation marks omitted). "A complaint may be dismissed if the facts as pled do not state a claim for relief that is plausible on its face." Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009). "Stated differently, the factual allegations in the complaint must possess enough heft to set forth a plausible entitlement to relief." Edwards, 602 F.3d at 1291 (quotation marks omitted).

Turning first to the fraud claim, Sampson alleges in his complaint, without any specific dates, meetings, conversations, or other circumstances, that the defendants fraudulently provided "materially false property value and payment disclosures" to him and "made material misrepresentations by representing that property values on the mortgage market were much greater than they actually were." That is not enough to sufficiently allege fraud.

6

When alleging fraud, a plaintiff "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The particularity rule alerts defendants of "the precise misconduct with which they are charged and protect[s] defendants against spurious charges of immoral and fraudulent behavior." Ziemba v. Cascade Int'l, Inc., 256 F.3d 1194, 1202 (11th Cir. 2001) (quotation marks omitted). Under Rule 9(b), a plaintiff must allege: "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud." Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1291 (11th Cir. 2010).

Because Sampson fails to allege in his complaint who made the misrepresentations, what their precise content was, when they were made, and where they were made, he has not set forth facts sufficient to plead fraud. Additionally, because Sampson failed to state a claim for fraud, he has failed to state claims for wrongful foreclosure and rescission of the note and mortgage because those claims depend on his claim that the defendant's committed fraud.

For the promissory estoppel claim, Sampson alleges in his complaint that some time after the loan had closed the defendants promised him that he would

7

have "the option of a short sale," but then they refused "to adjust the loan amount to facilitate the sale at the current market." Sampson also alleges that he relied on that promise and "made other financial arrangements to improve the subject property to encourage a short sale since." [4]

Under Georgia law, "[p]romissory estoppel cannot be applied unless the promisee reasonably relied on the promise." Gerdes v. Russell Rowe Commc'ns, Inc., 502 S.E.2d 352, 354 (Ga. Ct. App. 1998). Reliance is not reasonable if the "clear and unambiguous provision[s]" of the written contract between the promisor and promisee "served to place [the promisee] on due notice that he could not thereafter reasonably rely upon any words or other course of dealing to his inducement, other than a modification agreement actually reduced to writing." Id. at 355 (quoting Hendricks v. Enter. Fin. Corp., 405 S.E.2d 566, 569 (Ga. Ct. App. 1991).

The written security deed signed by Sampson provided (1) that the defendants were not required to "modify amortization of the sums secured . . . by reason of any demand made by" Sampson; (2) that Sampson "shall not be released

_____

[4] The complaint provided no detail about what was meant by "short sale" or what the terms were for the short sale option, and the allegations for the promissory estoppel claim are incoherent at best. We will assume Sampson meant that one of the two defendant banks (he did not specify which) had agreed both to allow him to sell the property at a price lower than the amount owed on the loan and to release him from the security deed without foreclosing on the property despite not receiving full repayment on the loan.

8

from [his] obligations and liability under this [security deed] unless [the defendants] agree[] to such release in writing"; (3) that any "forbearance by [the defendants] in exercising any right or remedy" or acceptance of "amounts less than the amount due, shall not be a waiver of or preclude the exercise of any right or remedy"; and (4) that the agreement "cannot be changed or modified except . . . by agreement in writing signed by" Sampson and the defendants. The "clear and unambiguous terms" of the written security deed require a writing to modify its terms. Sampson has thus failed to sufficiently allege in his complaint that it was reasonable for him to rely on the defendants' oral promise of a short sale option and a release from his obligations under the security deed without full repayment of the loan. See Gerdes, 502 S.E.2d at 354–55. Because he failed to sufficiently allege an essential element of his promissory estoppel claim, the district court did not err in dismissing it.

Sampson's Fair Credit Reporting Act claim does not fare any better. Section 1681s-2(b) of the FCRA requires a furnisher of credit (such as the defendants) to conduct an investigation and take other actions after the furnisher has been notified of inaccuracies in a consumer's credit report. See 15 U.S.C. § 1681s-2(b). The FCRA provides consumers (such as Sampson) with a private right of action against the furnisher if the furnisher fails to fulfill its requirements

9

under § 1681s-2(b). <u>See</u> 15 U.S.C. §§ 1681n, 1681o, & 1681s-2(c). To trigger the furnisher's responsibilities under § 1681s-2(b), however, the consumer must have notified the furnisher of a dispute about the inaccuracy of the credit report. Sampson does not allege in his complaint that he notified the defendants of any inaccuracies in his credit report, and he thus fails to state a claim under § 1681s-2(b) of the FCRA.

Lastly, Sampson's claim of "predatory lending" was alleged without reference to any state or federal cause of action, and he points to no legal authority creating a "predatory lending" cause of action in his brief to this Court. The district court did not err in dismissing that claim.

The district court did not err in dismissing Sampson's complaint.

**AFFIRMED.**