**THIRD DIVISION**
**ELLINGTON, P. J.,**
**DILLARD and MCFADDEN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**July 14, 2015**

# In the Court of Appeals of Georgia

A15A0792. RTT ASSOCIATES, INC. v. GEORGIA JE-037 DEPARTMENT OF LABOR.

ELLINGTON, Presiding Judge.

RTT Associates, Inc. brought this action in the Superior Court of Fulton County against the Georgia Department of Labor for breach of contract and breach of the implied covenants of good faith and fair dealing. After a hearing, the trial court determined that RTT failed to show that the State had waived sovereign immunity and granted the Department's motion for summary judgment on that basis. RTT challenges that ruling on appeal, along with the denial of its motion for judgment on the pleadings. For the reasons explained below, we affirm the trial court's denial of RTT's motion for judgment on the pleadings and reverse the grant of summary judgment in the Department's favor.

1. RTT contends that its claims constitute an action ex contractu for the breach of a written contract and, therefore, that the trial court erred in ruling that the State is entitled to sovereign immunity. It is undisputed that the parties entered into a written contract for RTT to develop a software program for the Department and that the Department refused to pay RTT the full contract price. In its complaint, RTT alleged, inter alia, that the Department breached the contract by refusing to compensate RTT for work performed under the contract and by purporting to terminate the contract for cause without giving RTT an opportunity to cure its default. In granting the Department's motion for summary judgment on the basis of sovereign immunity, the trial court noted that the parties' written contract provided that it would terminate on a specified date, which had passed. The trial court held that, as a result, RTT could only maintain an action for breach of that written contract by producing a written extension or amendment that contained all of the terms required to constitute a valid contract, including consideration for extending or amending the contract and the parties' mutual assent to any such changes. The trial court determined that RTT had failed to establish any written extension or amendment and ruled that RTT's claim was therefore not one for breach of a written contract for which the State had waived its sovereign immunity. RTT contends that, at a

minimum, a material question of fact exists regarding whether the parties agreed to extend the written contract and that the trial court therefore erred in finding as a matter of law that the Department is immune from suit. We agree.

On the subject of sovereign immunity, the Georgia Constitution of 1983 provides that "sovereign immunity extends to the State and all of its departments and agencies[,]" except as otherwise provided in Art. 1, § 2, ¶ 9 or unless the General Assembly in an Act "specifically provides that sovereign immunity is thereby waived and the extent of such waiver." Ga. Const. 1983, Art. 1, § 2, ¶ 9 (e). "[S]overeign immunity of a State agency is not an affirmative defense, going to the merits of the case; instead it raises the issue of the trial court's subject matter jurisdiction to try the case." (Punctuation and footnotes omitted.) *Dept. of Transp. v. Kovalcik*, 328 Ga. App. 185, 189-190 (1) (b) (761 SE2d 584) (2014). "Jurisdiction [to afford the relief sought] either exists or does not exist without regard to the merits of the case." (Citations and punctuation omitted.) *Dept. of Transp. v. Dupree*, 256 Ga. App. 668, 671 (1) (570 SE2d 1) (2002). Further, because "immunity from suit is a privilege that is subject to waiver by the State," rather than "an affirmative defense that must be established by the party seeking its protection," the claimant, as the party seeking to benefit from the waiver, has the burden of establishing the waiver. (Punctuation and

3

footnotes omitted.) *Tift County Sch. Dist. v. Martinez*, - Ga. App. - (1) (Case No. A14A1988, decided March 20, 2015).

When a court either has or lacks subject matter jurisdiction, regardless of any conflict in the facts that go to the merits of the case, the trial court should determine whether it has jurisdiction to afford the relief sought as a threshold issue at the outset. *Dept. of Transp. v. Dupree*, 256 Ga. App. at 671-672 (1). Sometimes, however, the determination of subject matter jurisdiction and waiver of sovereign immunity is so factually intertwined with determination of the merits of the case that the trial court may defer final determination of such issues until after the presentation of all the evidence at trial. Id. at 672 (1) (a).

We review de novo a trial court's ruling on the issue of whether it lacks subject matter jurisdiction under the doctrine of sovereign immunity, which is a question of law, but factual findings by the trial court in support of its legal decision are sustained if there is evidence authorizing them. *Dept. of Transp. v. Kovalcik*, 328 Ga. App. at 186; *Dept. of Corrections v. James*, 312 Ga. App. 190, 193 (718 SE2d 55) (2011).

This case concerns the constitutional provision that the State's defense of sovereign immunity is waived "as to any action ex contractu for the breach of any

written contract[.]" Ga. Const. 1983, Art. 1, § 2, ¶ 9 (c).[1] As a result, "to overcome the Department's assertion of sovereign immunity, [RTT] has the burden of showing that the contract sought to be enforced is in writing and contains all of the terms necessary to constitute a valid contract." (Citations omitted.) *Dept. of Community Health v. Data Inquiry, LLC*, 313 Ga. App. 683, 685 (1) (722 SE2d 403) (2012).

The record shows the following undisputed facts. The Department hired RTT in March 2012 to develop software for the Department to use in implementing the Work Opportunity Tax Credit program.[2] RTT and the Department entered into a written contract, State of Georgia State Entity Standard Contract Form, Contract No. GL12005-2717, which was signed on behalf of both parties. The contract provides for a maximum payment by the Department to RTT of $247,422.68 and specified a "Date of Completion" of June 30, 2012. The contract further provides that it "shall begin and end on the dates specified in the State Entity Standard Contract Form unless terminated earlier in accordance with the applicable terms and conditions."

[1] OCGA § 50-21-1 (a) restates this constitutional waiver of sovereign immunity and provides: "The defense of sovereign immunity is waived as to any action ex contractu for the breach of any written contract[.]"

[2] The Work Opportunity Tax Credit ("WOTC") program, which the Department coordinates, provides employers with financial incentives, in the form of reduced federal income tax liability, when hiring workers from targeted groups.

The contract provides for immediate termination under certain circumstances, termination upon written notice under certain circumstances, and termination for cause in the case of certain defaults by RTT. In the event of a default by RTT, the contract requires the Department to give RTT written notice of the default and specify a time period in which it may remedy the default. The contract also provides that it "may be amended in writing from time to time by mutual consent of the parties."

The work to be performed by RTT, and corresponding payment by the Department, was divided into four "Milestones." On March 8, 2012, the Department submitted a partial payment of $82,474.23 to RTT. RTT failed to deliver fully functional WOTC software by June 30, 2012 , the "Date of Completion" specified in Contract No. GL12005-2717.

During the latter half of 2012 and continuing into early 2013, the Department continued to work with RTT in an effort to allow RTT to deliver the WOTC software. The Department received multiple editions of the WOTC software from RTT, tested each new edition of the software, and determined that it was not fully functional. In a letter to RTT dated April 3, 2013, the Department notified RTT that it was in breach and noncompliance of Contract No. GL12005-2717 and that the contract was thereby "terminated immediately." In the letter, the Department stated that the contract had

been "extended multiple times [after] June 30, 2012[,] to allow [RTT] to complete and deliver satisfactory WOTC Processing System to [the Department]." On the same date, in a letter to Evergreen National Indemnity Company, the Department notified the bond company that Contract No. GL12005-2717 had been "extended multiple times [after] June 30, 2012[,] to allow completion and delivery of a Contract compliant WOTC processing System to [the Department]" and that, as of the date of the letter, "the Contract terms have not been met by RTT." In that letter, the Department notified the bond company of the costs it expected to incur to bring an alternative product on-line. According to a Department employee, RTT's software was never fully functional and did not meet the requirements of the contract and, at a meeting on May 7, 2013, the Department informed RTT of that fact, that the Department had decided not to use RTT's software, and that the contract was terminated.

On July 10, 2013, RTT filed its complaint for breach of contract and breach of the implied covenants of good faith and fair dealing. The Department asserted a counterclaim for breach of contract, alleging that RTT breached the contract by failing to complete and deliver the work required under Milestone 2, for which the

Department had issued advance payment, and by failing to timely deliver fully functional software that met the terms of the contract.

In granting the Department's motion for summary judgment, the trial court determined that RTT could only show that its claims constitute an action ex contractu for the breach of a written contract, and thereby satisfy its burden of proving a waiver of sovereign immunity, "by establishing a written extension or amendment to the Contract" between the parties, Contract No. GL12005-2717, under which RTT agreed to deliver the WOTC software by June 30, 2012. The court found that RTT failed to do so and that, "[a]t best, the record evidences [the Department's] willingness to not hold [RTT] to the delivery deadline contained in the written Contract[.]" On appeal, the Department defends the trial court's analysis, arguing that the written contract expired by its terms on June 30, 2012; neither party was bound by the terms of the contract after that date; and any work RTT performed after that date was not under any written contract. As the Department would have it, RTT "must logically be proceeding under a theory of *implied* contract for the period after June 30, 2012, and therefore the waiver of sovereign immunity contained in OCGA § 50-21-1[3] is inapplicable." (emphasis supplied).

---

[3] See footnote 1, supra.

8

The Department's position lacks merit. First, in some circumstances, certain obligations under a contract may survive the end of the contract. *Nebo Ventures, LLC v. NovaPro Risk Solutions, L.P.*, 324 Ga. App. 836, 844 (4) (752 SE2d 18) (2013); *McDevitt & Street Co. v. K-C Air Conditioning Svc.*, 203 Ga. App. 640, 643 (2) (418 SE2d 87) (1992).[4] Therefore, even if the passing of the specified "date of completion" meant that the written contract had expired, it does not follow that neither party was bound by any of the terms of the contract after that date.

In addition, "a written contract may be modified by mutual consent of the parties, which need not be expressed in words, in writing or signed, but the parties must manifest their intent to modify the original contract." *Ryder Truck Lines v. Scott*, 129 Ga. App. 871, 873-874 (4) (201 SE2d 672) (1973). See also *Medical Doctor Associates, Inc. v. Lab-Quip Co.*, 201 Ga. App. 880, 882 (1) (b) (412 SE2d 625) (1991) (accord); *Dan Gurney Indus. v. Southeastern Wheels*, 168 Ga. App. 504, 505 (1) (308 SE2d 637) (1983) (accord). Most pertinently, a provision that limits the time

[4] In the contract at issue in this case, for example, RTT agreed not to disseminate any confidential information it used in the course of performing the contract, an obligation that expressly survived termination of the contract, and the Department agreed not to reverse engineer RTT's product or create derivative works based thereon, an obligation that inherently survived the delivery of the completed custom software.

9

for performance may be waived, and "a subsequent offer to fulfill the contract and urging a compliance with the contract by the party of the other part, instead of treating the contract as at an end, amounts to a waiver." (Citation and punctuation omitted.) *Seay v. Malone*, 219 Ga. 149, 151 (1) (132 SE2d 261) (1963). See also *Bolton v. Barber*, 233 Ga. 646, 648 (2) (212 SE2d 766) (1975) ("[I]f time is of the essence of a contract, it may be waived; and . . . subsequent conduct of the obligor may have that effect.") (citations omitted).

Furthermore, a provision in a written contract that it may only be modified in writing may be waived, and waiver of such a written modification requirement may be established through the course of conduct of the parties. *Handex of Florida, Inc. v. Chatham County*, 268 Ga. App. 285, 288 (1) (602 SE2d 660) (2004); *Caribbean Lumber Co. v. Anderson*, 205 Ga. App. 415, 417, n. 1 (2) (422 SE2d 267) (1992). Generally, whether there has been a mutual departure from the terms of a contract, with a resulting modification of a contract, is generally a question for the jury. *Lynx Real Estate, Inc. v. F. A. L. Investments, LLC*, 312 Ga. App. 324, 327 (1) (718 SE2d 552) (2011); *Handex of Florida, Inc. v. Chatham County*, 268 Ga. App. at 288; *Norair Engineering Corp. v. Porter Trucking Co.*, 163 Ga. App. 780, 784 (295 SE2d 155) (1982).

10

In this case, the Department admits that it signed a legally valid, written contract, so the existence of a written contract *vel non* is not at issue.[5] And the record contains some evidence, recounted above, that, through their course of conduct, the Department and RTT waived or extended the required date of completion[6] and, likewise, waived the provision that the contract could be amended (only) in writing. The specific allegations of RTT's complaint, viewed in context of the documents of record, show that RTT is seeking recovery under a written contract, as (allegedly) amended. The Department's position that it did not intend to extend the time for RTT's performance that was specified in the written contract at issue in this case, at

---

[5] For this reason, *Bd. of Regents of Univ. Sys. of Ga. v. Barnes*, 322 Ga. App. 47 (743 SE2d 609) (2013), cited by the trial court, is inapposite, as it concerns a case where there was no written contract in the form of a single document. 322 Ga. App. at 50 (2) (for purposes of a waiver of sovereign immunity under Ga. Const. 1983, Art. 1, § 2, ¶ 9 (c), and OCGA § 50-21-1 (a), no written contract was established by an unauthenticated partial copy of the student code of conduct, which was not signed by either party, and a counseling center consent form, which was signed only by the plaintiff). See also *Dept. of Community Health v. Data Inquiry, LLC*, 313 Ga. App. at 686-687 (1) (b) (The claimant failed to show a waiver of sovereign immunity for its breach of contract claim where it failed to show that anyone ever executed the proposed written agreement on behalf of the State or the department and failed to show that the department paid the retainer as required in the written contract.).

[6] This is consistent with the trial court's acknowledgment that "the record evidences [the Department's] willingness to not hold [RTT] to the delivery deadline contained in the written Contract[.]"

11

most, points to a disputed issue of material fact, and the question whether there has been a mutual departure from the terms of the written contract is a question for the jury.[7] We conclude that the trial court erred in ruling that RTT's claims, as a matter of law, do not constitute an action ex contractu for breach of a written contract. Consequently, the trial court erred in granting the Department's motion for summary judgment on the basis of sovereign immunity.

2. RTT contends that the record establishes as a matter of law that the Department failed to send RTT written notice of its default under the contract and an opportunity to cure the default and, therefore, that the Department did not satisfy the conditions precedent in the termination-for-cause provision of the contract. As a result, RTT contends, the trial court erred in denying its motion for judgment on the pleadings on its breach of contract claims.

---

[7] For example, the Department raises an issue regarding the authority of its employee to modify and extend the contract, saying, "one employee's characterization of the contract as extended [past June 30, 2012,] and terminated in April 2013 does not make it so. . . . [T]he Department is not bound by the unauthorized acts of its employees." Whether its employees had or lacked authority to modify the contract is a fact issue. See *Caribbean Lumber Co. v. Anderson*, 205 Ga. App. at 417-418 (2) (Because there were issues of material fact concerning the scope of an engineer's actual and/or apparent authority to waive or change certain contractual provisions and, if he had authority to waive or change certain contractual provisions, which ones were waived by him, the trial court erred in granting the other party's motion for summary judgment.).

12

On appeal, we review de novo the trial court's decision on a motion for judgment on the pleadings, and we construe the pleadings in a light most favorable to the appellant, drawing all reasonable inferences in her favor. All well-pleaded material allegations of the opposing party's pleading are to be taken as true, and all allegations of the moving party which have been denied are taken as false.

(Citation and punctuation omitted.) *Poole v. In Home Health, LLC*, 321 Ga. App. 674 (742 SE2d 492) (2013).[8]

---

[8] The Department contends that RTT failed to preserve its right to appeal from this interlocutory ruling by failing to obtain a certificate of immediate review and file an application for interlocutory review under OCGA § 5-6-34 (b). This argument is plainly unfounded. See OCGA §§ 5-6-34 (d) (Where a direct appeal is taken under any provision of OCGA § 5-6-34 (a), (b), or (c), "all judgments, rulings, or orders rendered in the case which are raised on appeal and which may affect the proceedings below shall be reviewed and determined by the appellate court, without regard to the appeal ability of the judgment, ruling, or order standing alone and without regard to whether the judgment, ruling, or order appealed from was final or was appealable by some other express provision of law contained in [OCGA § 5-6-34], or elsewhere."); 9-11-56 (h) ("An order granting summary judgment on any issue or as to any party shall be subject to review by appeal."); *Sotter v. Stephens*, 291 Ga. 79, 84 (727 SE2d 484) (2012) ("[W]hen a direct appeal is taken, any other judgments, rulings or orders rendered in the case and which may affect the proceedings below may be raised on appeal and reviewed and determined by the appellate court.") (citation and punctuation omitted); *Southeast Ceramics, Inc. v. Klem*, 246 Ga. 294, 295 (271 SE2d 199) (1980) ("Although the appeal of a grant of a motion for summary judgment is not one of the appeals authorized by [OCGA § 5-6-34 (a)], it is a judgment from which direct appeal can be taken. . . . [Therefore,] when a direct appeal is taken [from an order granting a motion for summary judgment], any other judgments, rulings or orders rendered in the case and which may affect the proceedings below may be

13

In this case, RTT alleged that the Department failed to send RTT written notice of its default under the contract and an opportunity to cure the default. In its answer, the Department denied these allegations. For purposes of a motion for judgment on the pleadings, therefore, RTT's allegations are taken as false. Id. Although, as RTT contends, the Department did not allege in its counterclaim that it had provided notice of default and an opportunity to cure, this is not the same as admitting the opposite proposition. The trial court did not err in denying RTT's motion for judgment on the pleadings. Id.

*Judgment affirmed in part and reversed in part. McFadden, J., concurs. Dillard, J., concurs in judgment only as to Division 1 and concurs fully in Division 2.*

---

raised on appeal and reviewed and determined by the appellate court."); *Headrick v. Stonepark of Dunwoody Unit Owners Assn., Inc.*, - Ga. App. - (1) (a) (Case No. A14A1711, decided March 30, 2015) (accord); *Schoenbaum Ltd. v. Lenox Pines, LLC*, 262 Ga. App. 457, 458-459 (1) (a) (585 SE2d 643) (2003) (accord).

A15A0792.    RTT   ASSOCIATES,   INC.   v.   GEORGIA
DEPARTMENT OF LABOR.

DILLARD, Judge, concurring specially.

I concur fully in Division 2 of the majority's opinion. I concur in judgment only as to Division 1 because I do not agree with all that is said in that division of the majority opinion. Thus, the majority's opinion in Division 1 decides only the issues presented in that division and may not be cited as binding precedent in future cases. *See* Court of Appeals Rule 33(a).